UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SCIENTIFIC-ATLANTA, INC.,

    Plaintiff

    v.

IPG PHOTONICS CORPORATION,

    Defendant

Civil Action No: 05-10850 (RWZ)

---

## DEFENDANT IPG PHOTONICS CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendant IPG Photonics Corporation ("IPG"), by its attorneys Fish & Richardson P.C., hereby responds to the Complaint of Plaintiff Scientific-Atlanta ("S-A"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows.

IPG denies each and every allegation contained in the Complaint that is not expressly admitted below. Any factual allegation admitted below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that may arguably follow from the admitted facts. IPG denies that S-A is entitled to the relief requested or any other.

### NATURE OF ACTION

1.    IPG admits that this purports to be an action in which S-A seeks damages and injunctive relief under the patent laws of the United States for alleged infringement of U.S. Patent No. 5,225,925 ("the '925 patent"). IPG denies all remaining allegations of paragraph 1.

## THE PARTIES

2.      IPG is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations of paragraph 2 and therefore denies the same.

3.      IPG admits that it is a Delaware corporation with its principal place of business at 50 Old Webster Road, Oxford, Massachusetts 01540.

4.      IPG admits that it does business in the Commonwealth of Massachusetts and in this judicial district.

## JURISDICTION AND VENUE

5.      IPG admits that this Court has subject matter jurisdiction over the patent infringement allegation in Count I of the Complaint.

6.      Neither IPG nor its agents have committed any acts of direct or indirect infringement of the '925 patent in this judicial district or elsewhere, and therefore denies all such allegations.  For purposes of this paragraph 6, IPG admits only that this Court has personal jurisdiction over it for purposes of the patent infringement allegations in Count I of the Complaint.  IPG denies all remaining allegations of paragraph 6.

7.      Admitted.

## COUNT I

### Alleged Infringement Of The '925 Patent

8.      IPG incorporates herein by reference its answers to paragraphs 1-7 of the Complaint.

9.      IPG admits that the '925 patent is entitled "Sensitized Erbium Fiber Optical Amplifier and Source" and was issued on July 6, 1993 naming Stephen G. Grubb, Douglas W. Anthon, William L. Barnes, and Janet E. Townsend as inventors.  IPG denies that a copy of the

'925 patent was attached to the Complaint served on it. IPG denies that the '925 patent was duly and legally issued. IPG is without information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations of paragraph 9, and therefore denies the same.

10.    Given the ambiguity of the allegations in this paragraph 10 with regard to what is meant by the undefined phrase "generally relates to," IPG is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations, and therefore denies the same.

11.    IPG denies all allegations in this paragraph 11.

12.    For purposes of this paragraph 12, IPG admits only that it was aware of the existence of the '925 patent prior to the filing of the Complaint. IPG denies that it has infringed the '925 patent. IPG further denies that it had notice of any alleged infringement of the '925 patent. IPG further denies any allegations of alleged "willful" infringement, as well as all remaining allegations of paragraph 12.

13.    IPG denies that it has engaged in any "infringing acts" with regard to the '925 patent. IPG further denies that it has engaged in any acts that violated any alleged rights of S-A in the '925 patent.

14.    IPG denies that is has infringed the '925 patent. IPG further denies that S-A is entitled to any remedy, at law or otherwise. IPG denies all remaining allegations of paragraph 14.

15.    IPG denies the allegations in this paragraph 15.

## AFFIRMATIVE DEFENSES

Defendant IPG, as its Affirmative Defenses to the Complaint of S-A, states as follows:

### First Affirmative Defense

16.    IPG does not infringe and has not infringed any claim of the '925 patent.

### Second Affirmative Defense

17.    The claims in the '925 patent are invalid because they fail to satisfy the conditions for patentability specified in Title 35 of the United States Code, including, *inter alia*, §§ 101, 102, 103, and 112.

### Third Affirmative Defense

18.    The '925 patent is unenforceable against IPG, including pursuant to the doctrines of laches, equitable estoppel, patent misuse, and inequitable conduct.

19.    With regard to inequitable conduct, S-A, including through its alleged predecessors-in-interest in the '925 patent, all inventors, attorneys, and/or agents and/or others owing a duty of candor to the United States Patent & Trademark Office ("USPTO"), all of whom and which will be collectively referred to as "S-A," committed acts constituting inequitable conduct during the prosecution of the patent application that issued as the '925 patent ("the '925 patent application"), rendering the '925 patent unenforceable. These acts of inequitable conduct include applying for and obtaining patent claims that were unpatentable because they were anticipated by prior art, the failure to make the USPTO aware of highly material information known to S-A, and highly material misrepresentations made to the USPTO by or on behalf of S-A prior to issuance of the '925 patent. These acts and omissions were done deliberately, knowingly, and with the intent to deceive the USPTO into allowing claims of the '925 patent.

The facts and circumstances surrounding these acts of inequitable conduct include at least the following:

    a. A paper entitled "Efficient Operation of an Yb-Sensitized Er Fiber Laser at 1.56 μm" published in the journal Electronics Letters at Volume 24, Issue No. 18, page 1135 on September 1, 1988, and listed as authors M.E. Fermann, D.C. Hanna, D. P. Shepherd, P.J. Suni, and J.E. Townsend. This paper is hereinafter referred to as "the Fermann paper."

    b. The Fermann paper is prior art to the '925 patent.

    c. The Fermann paper renders claims of the '925 patent invalid.

    d. The Fermann paper renders claims of the '925 patent invalid by reasons of anticipation.

    e. S-A filed a Request for *Ex Parte* Reexamination of the '925 patent. In its request, S-A explicitly admits that: "*Fermann* [the Fermann paper] raises a substantial new question of patentability in that it discloses a silica-based optical fiber as a host glass doped with erbium and ytterbium. In particular, *Fermann* discloses a silica-based optical fiber further doped with 5 mole percent alumina and 5 mole percent phosphate. (page 1135, column 2, lines 44-47). *Fermann* also describes a fast nonradiative decay from the erbium $^4I_{11/2}$ level to the erbium $^4I_{13/2}$ level to prevent back transfer of energy to ytterbium. *Fermann* also describes a ratio of ytterbium ions to erbium ions of 21:1. (page 1135, column 2, lines 48-49). Consequently, S-A believes claims 1-6, 8, 9, 11, 14, 15, 19, 20, 30-32, and 34 of the '925 patent may be

anticipated by *Fermann* and, therefore, S-A asserts *Fermann* raises a
substantial question of patentability."

f.  As part of its Request for *Ex Parte* Reexamination, S-A amended numerous
claims to overcome the Fermann paper.

g.  As part of its Request for *Ex Parte* Reexamination, S-A narrowed the scope of
claims 1-7, 9-21, and 30-34 of the '925 patent.  These amendments were made
because these claims in the issued '925 patent are anticipated by the Fermann
paper.

h.  The Fermann paper is prior art that is highly material to patentability of claims
in the '925 patent.

i.  The Fermann paper is not cited on the face of the '925 patent.

j.  There is no evidence that the Examiner of the '925 patent considered the
Fermann paper in connection with the prosecution of the '925 patent.

k.  Janet E. Townsend, one of the named inventors of the '925 patent, is a co-
author of the Fermann paper.

l.  On information and belief, Janet E. Townsend knew of the Fermann paper
during prosecution of the '925 patent application.

m.  On information and belief, S-A knew of the Fermann paper during
prosecution of the '925 patent application.

n.  On information and belief, S-A knew of the high materiality of the Fermann
paper during prosecution of the '925 patent application.

o.  On information and belief, S-A knowingly presented, for examination by the USPTO during prosecution of the '925 patent application, claims that it knew were unpatentable over the Fermann paper.

p.  On information and belief, S-A knowingly presented, for examination by the USPTO during prosecution of the '925 patent application, claims that it knew were unpatentable as anticipated by the Fermann paper.

q.  In its Request for *Ex Parte* Reexamination, S-A admits that "*Fermann* [the Fermann paper] was not cited by the Examiner nor relied upon by the Examiner during prosecution of the '925 patent [application]," and more generally, "*Fermann* [the Fermann paper] was not specifically addressed in the prosecution of the '925 patent [application]."

r.  On information and belief, S-A knew or had reason to believe that the Examiner of the '925 patent application was unaware of the high materiality of the Fermann paper during prosecution of the '925 patent application.

s.  On information and belief, S-A failed to inform the Examiner of the '925 patent application of the Fermann paper during prosecution of the '925 patent application.

t.  On information and belief, S-A's failure to inform the Examiner of the '925 patent application of the Fermann paper during prosecution of the '925 patent application was done knowingly, willfully, and with the intent to deceive the USPTO into allowing the claims of the '925 patent application.

u.  William L. Barnes, another of the named inventors of the '925 patent, is the first-named author on a paper entitled "$Er^{3+}$-$Yb^{3+}$ and $Er^{3+}$ Doped Fiber

Lasers" published in October 1989 in the Journal of Lightwave Technology, Volume 7, Number 10, at page 1461. This paper is hereinafter referred to as "the Barnes paper." The Barnes paper cites to the Ph.D. thesis of M.E. Fermann, the first named author of the Fermann paper. In the Barnes paper, the authors of the Barnes paper acknowledge useful discussions with M.E. Fermann, the first named author of the Fermann paper.

v.  In his first Office action, the Examiner of the '925 patent application rejected many claims as anticipated over primary references disclosing lasers that use phosphate glass and rejected all claims as obvious over the primary references and secondary references, including the Barnes Paper. With respect to the Barnes paper, the Examiner stated "Barnes et al. further teaches the dopant concentrations and how they optimize lasing at the desired wavelengths."

w.  Two of the named inventors of the '925 patent, William L. Barnes and Janet E. Townsend, are co-authors of the Barnes paper.

x.  In its response, S-A argued that the independent claims of the '925 patent application are directed to "a silicic, not a phosphatic, optical fiber," and that "[t]he Examiner has missed the point of duplicating, and in fact, surpassing, the performance of the phosphatic glass media in a phosphorous-doped silica-based optical fiber, as claimed."

y.  S-A also made material misrepresentations regarding the Barnes paper, including by stating that "Barnes et al. (1989) describes an optical fiber that has a core doped with $Al_2O_3$ and $P_2O_5$ only for the purposes of improving the rare earth ion solubility and preventing devitrification. See page 2, column 1,

lines 17 through 19. There is no discussion or suggestion that a reduction in reverse transfer of energy from erbium to ytterbium ion dopants in the fiber may occur as a result of an optimized concentration of phosphate in a silica-based optical fiber."

z. Contrary to S-A's express misrepresentation, the Barnes paper does not describe an optical fiber that has a core doped with $Al_2O_3$ and $P_2O_5$ <u>only</u> for the purposes of improving the rare earth ion solubility and preventing devitrification. To the contrary, the Barnes paper states "[a]n $Al_2O_3/P_2O_5/SiO_2$ core was deposited to improve rare earth ion solubility and prevent devitrification [12]." Moreover, the Barnes paper goes on to state that "Several sets of data were acquired for lasing wavelength versus fiber length for both $Er^{3+}$ and $Er^{3+}$-$Yb^{3+}$ systems, an example of which is shown if [sic, in] Fig. 3. All of the data showed similar behavior with two distinct regimes of operation, termed the 'long' and 'short' operating wavelengths. This step-like behavior is in marked contrast to that previously reported, where a gradual transition was seen [5], [6]; but is similar to that predicted for phosphate glass [14]. Since this step occurred for both $Er^{3+}$ and $Er^{3+}$-$Yb^{3+}$ lasers it seems that the effect is due to $Al_2O_3$ and/or $P_2O_5$ used in fabricating these fibers, rather than from the $Yb^{3+}$. The fiber in [5] and [6] had a $GeO_2/SiO_2$ core glass, rather than $Al_2O_3/P_2O_5/SiO_2$ reported here, and it would thus appear that the $Al_2O_3$ and/or $P_2O_5$ causes a significant alteration in either the $^4I_{15/2}$ ground state, or in the $^4I_{13/2}$ metastable level, of $Er^{3+}$."

aa. Thus, the Barnes paper clearly discloses that the phosphate and alumina doped silica fibers described therein demonstrate properties predicted for phosphate glass, and it attributes such properties to the phosphate and/or alumina in the silica glass host. The Barnes paper therefore discloses a phosphorous-doped silica-based optical fiber that duplicates at least some of the properties of a phosphatic glass media.

bb. The Barnes paper further recognizes that the alumina and/or phosphate in the silica glass host causes a significant alteration in either the $^4I_{15/2}$ ground state, or in the $^4I_{13/2}$ metastable level, of $Er^{3+}$. It also states that "[t]he co-doped fiber was measured [13] to have a transfer efficiency of 37 percent for zero population inversion, and an estimated efficiency of 20 percent for an inversion of 50 percent," and goes on to describe an energy transfer slope efficiency comparable to, or better than, that disclosed in the Fermann paper.

cc. Thus, the Barnes paper discloses that the phosphate and alumina doped silica fibers described therein demonstrate efficient energy transfer from the $Yb^{3+}$ to $Er^{3+}$, indicating that there is a reduction in reverse transfer of energy from erbium to ytterbium ion dopants as a result of the phosphate and/or alumina in the silica-based optical fiber.

dd. It was these features of Barnes that S-A affirmatively misrepresented to the USPTO were absent from the Barnes reference.

ee. By its express misrepresentation, S-A diverted the Examiner's attention away from these features of the Barnes paper.

ff.  On information and belief, this misrepresentation was made with the intent of deceiving the USPTO into granting the '925 patent.

gg.  This misrepresentation was highly material, and, on information and belief was persuasive to the Patent Examiner's decision to allow the claims of the '925 patent.

hh.  The Barnes paper discloses a silica-based optical fiber including concentrations of erbium ions, ytterbium ions, and phosphate. The Barnes paper further discloses that the silica-based optical fiber functions as a laser source in which the ytterbium ions absorb radiation and efficiently transfers at least some of that energy to the erbium ions, which emit radiation when the erbium ions decay from the $^{4}I_{13/2}$ quantum level to the $^{4}I_{15/2}$ quantum level.

ii.  The Barnes paper renders one or more claims of the '925 patent application invalid.

jj.  On information and belief, S-A also knowingly presented, for examination by the USPTO during prosecution of the '925 patent application, claims that it knew were or must have believed to be, in view of its filing of this action, unpatentable as anticipated by the Barnes paper.

## COUNTERCLAIMS

Defendant IPG Photonics Corporation ("IPG") asserts the following counterclaims against Plaintiff Scientific-Atlanta ("S-A"):

### Parties

20.    Counterclaim Plaintiff IPG is a Delaware corporation with its principal place of business at 50 Old Webster Road, Oxford, Massachusetts 01540.

21.    On information and belief, Counterclaim Defendant S-A is a Georgia corporation having its principal place of business at 5030 Sugarloaf Parkway, Lawrenceville, Georgia, 30044.

### Jurisdiction

22.    These counterclaims arise under the patent laws of the United States as enacted under Title 35 of the United States Code, and the provisions of the Federal Declaratory Judgment Act. The jurisdiction of this Court is proper under 35 U.S.C. § 271 et seq. and 28 U.S.C. §§ 1331, 1338 and 2201-02.

### Venue

23.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

### Count I: Declaratory Relief Regarding Non-Infringement

24.    The allegations of paragraphs 20-23 above are incorporated herein by reference.

25.    IPG does not infringe and has not infringed any claim of the '925 patent, either directly or indirectly, whether by inducement, contributory infringement, or otherwise.

26.    In its Complaint, S-A alleges that IPG has infringed, and continues to infringe, claims of the '925 patent. Because IPG denies that it has infringed, or continues to infringe, any

claim of the '925 patent, an actual and justiciable controversy has arisen and now exists between

IPG and S-A as to whether IPG infringes any of the claims of the '925 patent.

27.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., IPG

requests the declaration of the Court that IPG does not infringe any claim of the '925 patent.

## Count II: Declaratory Relief Regarding Invalidity

28.     The allegations of paragraphs 20-27 are incorporated herein by reference.

29.     The claims of the '925 patent are invalid because they fail to satisfy the conditions

of patentability specified in Title 35 of the United States Code, including, *inter alia*, §§ 101, 102,

103, and 112.

30.     Given S-A's filing of this lawsuit, it apparently contends that the claims of the

'925 patent are valid.  Because IPG contends that the claims of the '925 patent are invalid, an

actual and justiciable controversy has arisen and now exists between IPG and S-A as to the

validity of the '925 patent.

31.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., IPG

requests the declaration of the Court that the patent-in-suit is invalid.

## Count III: Declaratory Relief Regarding Unenforceability

32.     The allegations of paragraphs 20-31 are incorporated herein by reference.

33.     The '925 patent issued on July 6, 1993.  S-A, including through their

predecessors-in-interest, has unreasonably delayed in filing suit against IPG, and is barred from

enforcing the '925 patent against IPG under the doctrines of laches and equitable estoppel.

34.     S-A has committed acts of patent misuse in connection with the '925 patent, and

is barred from enforcing the '925 patent against IPG because of the patent misuse.

35.    S-A, including through their predecessors-in-interest in the '925 patent, attorneys and/or agents and/or others owing a duty of candor to the United States Patent & Trademark Office ("USPTO"), committed acts constituting inequitable conduct during the prosecution of the '925 patent application, rendering the '925 patent unenforceable.  The allegations of paragraph 19 are incorporated herein by reference.

36.    An actual and justiciable controversy therefore has arisen and now exists between IPG and S-A as to the enforceability of the '925 patent against IPG.

37.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., IPG requests the declaration of the Court that the patent-in-suit is unenforceable against IPG.

### Prayer for Relief

IPG respectfully requests a judgment against S-A as follows:

A.    A declaration that IPG does not infringe and has not infringed the '925 patent;

B.    A declaration that the '925 patent is invalid;

C.    A declaration that the '925 patent is unenforceable against IPG;

D.    That S-A take nothing by its Complaint;

E.    That the Court enter judgment against S-A and in favor of IPG and that S-A's complaint be dismissed with prejudice;

F.    That the Court enter judgment that this case is an exceptional case under 35 U.S.C. § 285, and enter judgment awarding IPG its costs and reasonable attorneys' fees; and

G.    That the Court grant IPG whatever further relief the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, IPG hereby demands a trial by jury of all issues.

Dated:  June 2, 2005

Kurt L. Glitzenstein (BBO No. 565,312)
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110
Telephone: 617-542-5070
Facsimile: 617-542-8906

Attorneys for Defendant
IPG Photonics Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on June 2, 2005.

_____
Kurt L. Glitzenstein

21099185.doc