UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCIENTIFIC-ATLANTA, INC.,<br><br>  Plaintiff<br><br>  v.<br><br>IPG PHOTONICS CORPORATION,<br><br>  Defendant | Civil Action No: 05-10850 (RWZ) |

**DEFENDANT'S (1) RESPONSE TO MOTION FOR STAY OF LITIGATION PENDING REEXAMINATION OF U.S. PATENT NO. 5,225,925 AND (2) OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL IDENTIFICATION OF PRIOR ART**

Defendant IPG Photonics Corporation ("IPG") submits this response to the motion by Plaintiff Scientific-Atlanta, Inc. ("S-A") entitled MOTION FOR STAY OF LITIGATION PENDING REEXAMINATION OF U.S. PATENT NO. 5,225,925. S-A's motion seeks two distinct forms of relief: (1) a stay of the litigation, and (2) an order compelling IPG to "identify all prior art of which it is currently aware that might affect the validity of the '925 patent."

IPG hereby assents to the stay portion of S-A's motion, and opposes the motion to compel portion of S-A's motion.

## I.   INTRODUCTION, SUMMARY OF ARGUMENT, AND BACKGROUND

There is no question that the present case should be stayed, and IPG assents to that portion of S-A's motion.[1]

Indeed, the case never should have been filed. Over a year and a half ago, IPG in a demonstration of good faith and in an effort to forestall exactly the proceeding that it now finds

---

[1] Before S-A filed the present motion, counsel for IPG informed counsel for S-A that IPG would likely agree to some kind of arrangement that would avoid the need to do any work on this litigation during the pendency of the reexamination.

itself subjected to, told S-A about the critical "Fermann" prior art paper,[2] and explained why this reference invalidates the relevant claims of the patent-in-suit. There is no serious dispute that IPG was right: After doing nothing for the past eighteen months, S-A now admits to the Patent Office that its patent is defective, in that most of the claims are invalid because of the Fermann paper. S-A did so in its "reexamination request," a formal petition to the Patent Office to fix the patent. IPG had no role in this reexamination request, and will have no role in the reexamination proceeding. That proceeding is purely *ex parte*, and the Patent Office will not get to hear from anyone other than S-A.

In short, S-A so lacked in conviction regarding the strength of its patent that it sought a reexamination from the Patent Office. And S-A so lacked in conviction regarding the merits of its position in this lawsuit that it sought to stay this case just three weeks after filing its Complaint, before IPG had even filed an answer.

Despite all of this, S-A asks this Court for the extraordinary, and apparently unprecedented, relief of compelling IPG to produce its highly confidential internal work product, namely, the collection of other prior art that its attorneys have determined to be relevant to the invalidity of the patent-in-suit. S-A does not cite even a single case in support of this relief. This is unsurprising, given that S-A is asking this Court to ignore the Federal Rules of Civil Procedure and the Local Rules of this District, the important distinctions between *ex parte* and *inter partes* reexaminations, and fundamental notions of fairness. S-A freely admits that this demand for this expedited production has nothing to do with this case, and everything to do with the reexamination proceeding. This is a clear misuse of the discovery process, and should be denied.

---

[2]   M.E. Fermann et al., "Efficient Operation of an Yb-Sensitized Er Fiber Laser at 1.56 μm," Journal of Electronics Letters, Vol. 24, No. 18, page 1135 (September 1, 1988).

## II. ARGUMENT

### A. S-A's Motion To Compel Is Completely Unsupported By Legal Authority

S-A's one-paragraph argument on this issue is unsupported by any legal authority. Our legal research has likewise not uncovered even a single case providing for the extraordinary relief of compelling a defendant—particularly one who neither asked to be sued nor asked to initiate a reexamination proceeding—to divulge its list of invalidating prior art before the discovery process has even begun, all in an effort to assist the plaintiff in its efforts to "sanitize" the patent through the *ex parte* reexamination process.

S-A appears at page 14 of its memorandum to suggest that its position on this motion is supported by *Pegasus Development Corporation v. DirectV, Inc.*, 2003 WL 21105073, *2 (D. Del. 2003). However, *Pegasus* only concerned the defendants' motion to stay the litigation pending reexamination, which the court granted. The issue of whether the defendant should be compelled to identify invalidating prior art documents for use in the reexamination was not even raised in the case. Moreover, it was the *defendant* in *Pegasus* that requested both the reexamination and the stay in the litigation, whereas here it is the *plaintiff*, S-A, that has (belatedly) brought suit, requested reexamination, requested a stay, and now requests that the court compel the identification of prior art documents. *Id.* The case is wholly inapposite.

### B. S-A's Motion To Compel Should Be Denied As An Unwarranted Invasion Into IPG's Opinion Work Product

S-A's motion to compel seeks production of IPG's internal, confidential attorney opinion work product. Specifically, S-A asks for an order compelling IPG to "identify all prior art of which it is currently aware that might affect the validity of the '925 patent." That requires two aspects of legal analysis: whether a particular piece of information constitutes "prior art," and, if so, whether it "might affect the validity of the '925 patent." Both aspects of this analysis constitute "opinion" work product, as opposed to "ordinary" work product. Both were conducted after S-A first raised the '925 patent with IPG, and so were done in anticipation of litigation.

3

The First Circuit has held that a heightened standard of protection applies to attorney work product, the disclosure of which would create a real danger of revealing the attorney's thoughts. *In re San Juan Dupont Hotel Fire Litigation,* 859 F.2d 1007, 1015 (1st Cir. 1988). In this regard, there are two classes of work product, "opinion" work product and "ordinary" work product. Opinion work product includes items reflecting an attorney's legal strategy, his intended lines of proof, his evaluation of the relative strengths and weaknesses of his case, and inferences which he draws. *See United States v. Weisman,* 1995 WL244522, *5 (S.D.N.Y. 1995). As with the materials sought by S-A, the review, selection and compilation of documents in connection with litigation is one task attorneys frequently undertake which reflects opinion work product. *See Santiago v. Miles,* 121 F.R.D. 636, 638 (W.D.N.Y. 1988).

Opinion (or mental impression) work product is afforded even greater protection from disclosure and cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship. *See Upjohn Company v. United States,* 449 U.S. 383, 401 (1981); *see also In re Grand Jury Subpoena,* 220 F.R.D. 130, 145 (D.Mass. 2004) ("Opinion work product, on the other hand, qualifies for greater protection, although neither the Supreme Court nor the First Circuit has taken a position in the debate regarding the extent of such protection."); *Colonial Gas Company v. Aetna Casualty & Surety Company,* 144 F.R.D. 600, 605 (D.Mass. 1992) (noting that "[o]pinion work product revealing an attorney's mental impressions receives heightened protection," and holding that documents were protected as opinion work product).

Although the First Circuit has apparently not yet taken a position on the precise extent of the extra protection afforded opinion work product, decisions from other Circuits show that it is extremely difficult, if not impossible, to discover opinion work product. Some courts apply an

absolute protection to "opinion" work product. *See, e.g., Bulk Lif. Int'l, Inc. v. Flexon & Sys., Inc.*, 122 F.R.D. 482, 491 (W.D.La. 1988); *Hisaw v. Unisys Corp.*, 134 F.R.D. 151, 152 (W.D.La. 1991). In the Second Circuit, "opinion work product enjoys a near absolute immunity and can be discovered only in very rare and extraordinary cases…where weighty considerations of public policy and proper administration of justice would militate against nondiscovery." *In re Minebea*, 143 F.R.D. 494, 499 (S.D.N.Y. 1992).

Whatever the precise standard, it is, however, clear that the First Circuit applies a heightened standard of protection to this class of work product. S-A's one-paragraph argument in support of its motion to compel does not even come close to justifying the invasion of IPG's opinion work product.

### C.   S-A's Motion To Compel Is An Attempted End-Run Around The Federal and Local Rules

S-A's motion to compel also begs one simple question:   What is the basis for S-A's demand?  IPG had not even answered the Complaint at the time S-A filed its motion.  S-A has not served any interrogatories or document requests that purport to seek the information that it now says IPG should be compelled to produce.  Indeed, S-A has not even served its initial disclosures, and so is forbidden to initiate such written discovery.  L.R. 26.2 ("Unless otherwise ordered by such a judicial officer, before a party may initiate discovery, that party must provide to the other parties disclosure of the information and materials called for by Fed.R.Civ.P. 26(a)(1).")  There is simply no procedural foundation for the requested relief.

### D.   S-A's Motion To Compel Is An Unfair Attempt To Invoke The Power Of The Court For Use In Another Proceeding

Procedural rules aside, S-A's request boils down to an attempt by S-A to use the reexamination tail to wag the litigation dog.  S-A simply cannot enlist the offices of this Court to obtain information for use in another proceeding.

S-A admits that its purpose in seeking this expedited and extraordinary discovery is purely to use this information for the reexamination:

> In order to ensure that all relevant information is before the USPTO to conduct the reexamination of the '925 patent, S-A requests, as part of this motion, that the Court order IPG to identify all prior art of which it is currently aware that might affect the validity of the '925 patent.

(*S-A Motion for Stay of Litigation*, at 1.)

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). However, "[i]n deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund Inc., v. Sanders*, 437 U.S. 340, 353 n.17 (1978). The Supreme Court in *Oppenheimer* rejected the attempt to use the discovery process for such improper purposes: "Respondents' attempt to obtain the class members' names and addresses cannot be forced into the concept of "relevancy" described above [in Fed.R.Civ.P. 26(b)(1)] ... [because] they desired this information to enable them to send the class notice, and not for any other purpose." 437 U.S. at 353. *Accord, Nighthawk Limited. v. Briarpatch Limited.*, 2003 WL 23018833, *8 (S.D.N.Y.) ("Defendants cannot use this subpoena to obtain information for use in state court proceedings.").

### E.   S-A Is Attempting To Capitalize Unfairly On The *Ex Parte* Reexamination Process

The reexamination proceeding initiated by S-A is *ex parte*. IPG had no role in the reexamination request, and will have no role in the reexamination proceeding. The Patent Office will not get to hear from anyone other than S-A.

What S-A wants to do on the present motion is very simple, and completely unfair: S-A seeks to compel production of IPG's work product prior art compilation so that it can present those prior art materials to the Patent Office in a completely one-sided proceeding. S-A knows

6

full well that, as a practical matter, it is very difficult to attack a patent on the basis of a reference that was cited to the Patent Office. *See Hewlett-Packard Company v. Bausch & Lomb Incorporated*, 909 F.2d 1464, 1467 (Fed. Cir. 1990) ("burden [of showing invalidity of claims] is especially difficult when the prior art was before the PTO examiner during prosecution of the application"). S-A also knows that it stands a much better chance of persuading the Patent Office that its claims are patentable over the prior art in an *ex parte* proceeding where IPG is not present to tell the full story. *See Telebrands Direct Response Corporation v. Ovation Communications, Inc.*, 802 F.Supp. 1169, 1177 (D.N.J. 1992) ("In addition to this standard basis for deference, the Court finds that the patent issued in this case merits an added degree of respect since it was not issued pursuant to the usual *ex parte* PTO proceeding, but rather, subject to *inter partes* input from Telebrands, an opponent of the patent…. While the PTO study was certainly not a full blown adversarial hearing, it did incorporate competing views, a step which certainly bolsters the credibility of its ultimate conclusion that (for patent purposes) the Thighmaster design is primarily aesthetic."). The use of *inter partes* advocacy as a truth-seeking mechanism, long-enshrined in Article III proceedings, is simply absent from the Article I Patent Office administrative reexamination process chosen by S-A.

In this regard, the relief sought by S-A's motion to compel would also erase a critical statutory distinction in the Patent Act. The Act specifically provides for *inter partes* reexaminations. 35 U.S.C. §§ 311-18. However, accused infringers rarely elect to invoke such proceedings, including because they will be estopped in subsequent civil actions from relying on any prior art that they knew of or otherwise could have raised during the reexamination process. *Id*. at § 315(c). In short, the statute requires the accused infringer—as a part of the price paid for invoking the *inter partes* process in order to have the right to be heard during the reexamination—to make a full disclosure of all of its known prior art. This is exactly what S-A seeks to compel through this motion, but without giving IPG the right to be heard. S-A's effort to "have its cake, and eat it too" would in effect force all of the disadvantages of *inter partes* reexamination on IPG, without giving IPG any of the benefits of that process. IPG has no

interest in participating in a reexamination, least of all on the unfavorable terms that S-A is improperly trying to thrust on IPG. S-A simply cannot force IPG to participate, directly or indirectly, in a reexamination. *See In re Continental General Tire, Inc.*, 81 F.3d 1089, 1093 (Fed. Cir. 1996) (district court cannot compel alleged infringer to request reexamination of the patents at issue).

### III. CONCLUSION

For the foregoing reasons, IPG respectfully requests that the Court grant that portion of S-A's motion that seeks a stay of this litigation, and deny that portion of S-A's motion that seeks an order compelling IPG to "identify all prior art of which it is currently aware that might affect the validity of the '925 patent."

Dated: June 2, 2005

_____
Kurt L. Glitzenstein (BBO No. 565,312)
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110
Telephone: 617-542-5070
Facsimile: 617-542-8906

Attorneys for Defendant
IPG Photonics Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on June 2, 2005.

_____
Kurt L. Glitzenstein

21099547.doc