IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SCIENTIFIC-ATLANTA, INC.,

        Plaintiff,

   v.

IPG PHOTONICS CORPORATION,

        Defendant.

Civil Action No. 05-10850-RWZ

**THIRD STATUS REPORT
REGARDING THE USPTO'S REEXAMINATION
OF U.S. PATENT NO. 5,225,925**

In response to the Court's October 13, 2006 request for a status report regarding the Reexamination of U.S. Patent No. 5,225,925 (the "'925 patent"), the patent-in-suit, by the U.S. Patent and Trademark Office ("USPTO"), plaintiff Scientific-Atlanta, Inc. ("S-A") reports that the Reexamination is still in progress. In particular, the Examiner assigned to the Reexamination recently issued an Office Action dated October 11, 2006, a copy of which is attached hereto as Exhibit A. S-A is in the process of promptly responding to the October 11, 2006 Office Action, and will promptly report to the Court on the next Office Action when it receives it.

Dated: October 30, 2006 Respectfully submitted,

/s/ David E. Cole
Denise W. DeFranco (BBO #558859)
David E. Cole (BBO #658705)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000

Patrick J. Flinn (*pro hac vice*)
J. Patrick Elsevier (*pro hac vice*)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta GA 30309-3424
(404) 881-7000

Attorneys for SCIENTIFIC-ATLANTA, INC.

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the NEF.

/s/ David E. Cole

# EXHIBIT A

To
Status Report

Case 1:05-cv-10850-RWZ   Document 16-2   Filed 10/30/2006   Page 1 of 14

LEGAL02/12153125v1

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/007,524 | 04/27/2005 | 5225925 | A-2782 | 6888 |

5642        7590        10/11/2006

SCIENTIFIC-ATLANTA, INC.
INTELLECTUAL PROPERTY DEPARTMENT
5030 SUGARLOAF PARKWAY
LAWRENCEVILLE, GA  30044

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 10/11/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| Office Action in *Ex Parte* Reexamination | Control No. 90/007,524 | Patent Under Reexamination 5225925 |
|---|---|---|
| | Examiner James Keenan | Art Unit 3993 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

a ☒ Responsive to the communication(s) filed on <u>27 April 2005</u>.   b ☐ This action is made FINAL.

c ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire ☒ 1 (one) month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.        3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO-1449.              4. ☐ _____.

Part II  SUMMARY OF ACTION

1a. ☒ Claims <u>1-7 and 9-52</u> are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2.  ☒ Claims <u>8</u> have been canceled in the present reexamination proceeding.
3.  ☐ Claims _____ are patentable and/or confirmed.
4.  ☒ Claims <u>1-7 and 9-52</u> are rejected.
5.  ☐ Claims _____ are objected to.
6.  ☐ The drawings, filed on _____ are acceptable.
7.  ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.
8.  ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All  b) ☐ Some*  c) ☐ None   of the certified copies have
    1 ☐ been received.
    2 ☐ not been received.
    3 ☐ been filed in Application No. _____.
    4 ☐ been filed in reexamination Control No. _____.
    5 ☐ been received by the International Bureau in PCT application No. _____.
    * See the attached detailed Office action for a list of the certified copies not received.
9.  ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.
10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 04-01)                       Office Action in Ex Parte Reexamination                     Part of Paper No. 20060818

Application/Control Number: 90/007,524    Page 2
Art Unit: 3652

1. The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

2. Claims 42-45 and 47 are rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the enablement requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to enable one skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention.

Claims 42-44 lack support in the specification, and claim 45 is at least partially inconsistent with the specification.

Additionally, claims 42 and 43 recite a range of decay times including zero, while claim 47 recites a range of rise times including zero, both of which are an impossibility.

Patent owner may wish to consider amending original claims 23-26 and 28 as well.

3. The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

4. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

Application/Control Number: 90/007,524                                                              Page 3
Art Unit: 3652

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

5.   Claims 22-29 are rejected under 35 U.S.C. 102(b) as being anticipated by Fermann et al ("Efficient Operation of an Yb-Sensitized Er Fibre Laser at 1.56 μm"), cited by Patent owner.

Fermann et al, as noted by Patent owner in the reexamination request, show a phosphate- and aluminum-doped silica-based optical fiber for use in a laser, comprising a concentration of erbium and ytterbium ions which provide and absorb radiation and decay in the manner set forth in the claim to reduce back transfer of energy from the erbium ions to the ytterbium ions. Fermann et al do not explicitly state that the transfer rate and decay time of the ytterbium to erbium energy transfer is "much faster", as broadly claimed, than the erbium to ytterbium transfer rate. However, this is not a structural limitation, but rather simply an inherent characteristic of a fiber constructed in the manner set forth in the claim. Since the claim recites neither any specific concentrations or proportions of erbium, ytterbium, or phosphate, nor any specific decay times or transfer rates, and since the fiber described by Fermann et al has concentrations and proportions of erbium, ytterbium, and phosphate within the ranges disclosed by and operates in the manner set forth in the Patent, it is considered to inherently meet this functionally recited limitation.

Re claims 23-29, Fermann et al do not state specific decay times of the erbium and ytterbium ion quantum energy levels, or the rise time of the energy transfer from the

Application/Control Number: 90/007,524                                                                    Page 4
Art Unit: 3652

ytterbium ion energy level to the erbium ion energy level. Nevertheless, in much the same manner noted above, the fiber optic cable disclosed by Fermann et al is believed to inherently possess these properties, inasmuch as these are simply characteristics of a fiber possessing the structural limitations set forth in the claims, rather than being structural limitations *per se*.

6.  Claims 1-3, 5, 6, 9-11, 14-21, 23-29, and 30-34 are rejected under 35 U.S.C. 103(a) as being unpatentable over Fermann et al (cited above) in view of Barnes et al ("High-quantum-efficiency $Er^{3+}$ fiber lasers pumped at 980nm") or Grubb et al ("Co-doped Erbium Fibers for Optical Amplifiers"), both cited by Patent Owner.

It is noted that the Grubb et al reference may or may not be prior art. However, inasmuch as it was cited by Patent Owner, it will be assumed to be prior art unless shown otherwise.

Fermann et al teach a phosphate concentration of 5 mole percent, rather than a range of greater than 5 percent to 25 percent. However, nothing in Fermann et al states that 5 percent is critical; it is simply the percentage that was utilized in the experiment.

Barnes et al and Grubb et al show similar phosphate-doped silica-based fiber cables wherein the amount of phosphate can be 3-4 weight percent (Barnes et al) or 14 mole percent (Grubb et al). Although it is not entirely clear what 3-4 weight percent would be as a mole percent, it is believed to be within the range specified. The only example given in the Patent under reexam is a weight percent of phosphate of 9.32% (Table II). Since this specific amount is presumably within the range of 5-25 mole

Application/Control Number: 90/007,524                                                                 Page 5
Art Unit: 3652

percent set forth in the claims, and most likely near the middle (15%) of that range, 3-4 weight percent is considered to be at least greater than 5 mole percent, unless Patent owner shows otherwise.

It would have been obvious for one of ordinary skill in the art at the time of the invention to have modified the fiber optic cable of Fermann et al to have a phosphate concentration of more than 5 mole percent, and thus be in the range of greater than 5 mole percent to 25 mole percent, based on the teachings of Barnes et al or Grubb et al, in that it has been held that where the general conditions of a claim are disclosed, discovering an optimum range involves only routine skill in the art. Note that "greater than 5 mole percent" could include a percentage only infinitesimally (and thus insignificantly) greater than that shown by Fermann et al. Coupled with the teachings of the secondary references, it is therefore believed that the limitation is merely an obvious variation.

Re claims 2, 3, 5, and 6, the concentration of erbium and ytterbium ions in Fermann et al is 800 and 17,000 ppm, respectively.

Re claims 9-10, the discovery of a more specific optimum range and value of phosphate concentration as set forth therein is considered to require only routine skill, which, absent any showing of criticality, would be an obvious variation.

Re claim 11, the proportion of Yb to Er ions is 21:1.

Re claim 14, Fermann et al teach a 5 mole percent concentration of alumina.

Re claim 15, the same logic as set forth above applies regarding a concentration of alumina of less than 5 mole percent. (Barnes et al teach 3 weight percent alumina).

Application/Control Number: 90/007,524                                                    Page 6
Art Unit: 3652

Re claims 16-18, the radiation is absorbed by the ytterbium ions at 1064 nm.

Re claims 19-20, the radiation is produced by the erbium ions between 1549 and 1568 nm.

Re claim 21, producing radiation at 1535 nm is considered an obvious and minor variation of the range specified by Fermann et al.

Re claims 23-29, although the fiber of Fermann et al is believed to inherently possess the specific rise and decay times set forth therein, as noted above in paragraph 3, in the event this is shown to not be correct, the specific rise and decay times are considered to be obvious variations which would follow logically in response to a change in the phosphate mole percent concentration, particularly in the absence of any showing of criticality (it being noted that the decay times set forth in claims 23-25 are not even mentioned in the written specification and the decay time set forth in claim 26 is disclosed in the specification only as "preferably at least 40 microseconds, and ideally at least 10 microseconds").

7.    Claims 23-29 and 49-52 Fermann et al in view of Barnes et al (cited above) or Snitzer et al (3,599,114).

Re claim 49, Fermann et al teach a 5 mole percent concentration of alumina, while Barnes et al show a 3 weight percent concentration, as noted above with respect to claims 14 and 15. Snitzer et al disclose a Yb/Er doped silica-based laser fiber glass with a concentration of alumina of 1.58 weight percent (col. 3, lines 51-60).

Application/Control Number: 90/007,524                                                   Page 7
Art Unit: 3652

It would have been obvious for one of ordinary skill in the art at the time of the invention to have modified the fiber optic cable of Fermann et al to have an alumina concentration of less than 5 mole percent, based on the teachings of Barnes et al or Snitzer et al, in that it has been held that where the general conditions of a claim are disclosed, discovering an optimum range involves only routine skill in the art. Note that "less than 5 mole percent" could include a percentage only infinitesimally (and thus insignificantly) less than that shown by Fermann et al. Coupled with the teachings of the secondary references, it is therefore believed that the limitation is merely an obvious variation.

Re claims 50-52, again, the discovery of a more specific optimum range of alumina concentration as set forth therein is considered to require only routine skill, which, absent any showing of criticality, would be an obvious variation.

Re claims 23-29, although the fiber of Fermann et al is believed to inherently possess the specific rise and decay times set forth therein, as noted above in paragraph 3, in the event this is shown to not be correct, the rise and decay times are considered to be obvious variations which would follow logically in response to a change in the alumina mole percent concentration.

8.     Claims 23-29 and 40-48 are rejected under 35 U.S.C. 103(a) as being unpatentable over Fermann et al in view of Barnes et al ("$Er^{3+}$-$Yb^{3+}$ and $Er^{3+}$ Doped Fiber Lasers") or Snitzer et al (US 4,815,079), both cited by Patent owner.

Application/Control Number: 90/007,524                                                                 Page 8
Art Unit: 3652

Note that these are not the same Barnes et al and Snitzer et al references used above.

Re claims 40-41, Fermann et al teach a proportion of Yb to Er ions of 21:1, as noted above, although it is disclosed that higher output powers can be achieved with higher Yb concentrations.

Barnes et al disclose the same type of fiber laser wherein the proportion of Yb to Er ions is in the range of 10:1 to 40:1, with 20:1 through 30:1 being most productive.

Snitzer et al disclose the same type of laser with a 50:1 concentration of Yb to Er ions.

It would have been obvious for one of ordinary skill in the art at the time of the invention to have modified the fiber optic laser of Fermann et al by utilizing a proportion of Yb to Er ions of 20:1 or within a range of 25:1 to 80:1, as taught by Barnes et al and Snitzer et al, as these are merely well known and art recognized variations which could be used if slightly different characteristics of the laser were desired.

Re claims 23-29 and 42-48, although the fiber of Fermann et al is believed to inherently possess the specific rise and decay times set forth therein, as noted above in paragraph 3, in the event this is shown to not be correct, the rise and decay times are considered to be obvious variations which would follow logically in response to a change in the Yb to Er concentration proportion.

9.     Claims 4, 7, 12, 13, and 35-39 are rejected under 35 U.S.C. 103(a) as being unpatentable over Fermann et al in view of Barnes et al or Grubb, as applied to claims

Application/Control Number: 90/007,524    Page 9
Art Unit: 3652

1-3, 5, 6, 9-11, 14-21, 23-29, and 30-34 in paragraph 4 above, and further in view of Barnes et al or Snitzer et al (as cited in paragraph 6 above).

As noted above, the modified apparatus of Fermann et al shows an erbium ion concentration of 800 ppm and a ytterbium ion concentration of 17,000 ppm, rather than "approximately 1,000 ppm" and "approximately 30,000 ppm", respectively. However, in view of the teachings of different proportions of Yb to Er concentrations of 10:1 to 50:1 shown by Barnes et al and Snitzer et al, concentrations of approximately 1,000 ppm erbium ions and 30,000 ppm ytterbium ions would merely be obvious variations. For example, assuming the same concentration of 800 ppm erbium ions of Fermann et al, a proportion of 37.5:1 Yb to Er ions would result in a ytterbium ion concentration of 30,000 ppm, a figure within the range disclosed by Barnes et al. Similarly, assuming the same ytterbium ion concentration of 17,000 ppm of Fermann et al, a proportion of 17:1 Yb to Er ions would result in an erbium ion concentration of 1,000 ppm, a figure also within the range disclosed by Barnes et al.

Re claims 12-13, as noted above, Barnes et al teach a proportion as low as 10:1.

Re claims 35-39, a concentration of 30,000 ppm ytterbium and 1,000 ppm erbium results in a proportion of 30:1, again within the range disclosed by Barnes et al. The concentrations of phosphate and alumina are treated in the manner set forth above with respect to claims 1, 9, 10, and 49-52.

10.    The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Application/Control Number: 90/007,524                                                                          Page 10
Art Unit: 3652

11.   In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 5,225,925 throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c).

Application/Control Number: 90/007,524                                                      Page 11
Art Unit: 3652

Please mail any communications to:

Attn: Mail Stop "Ex Parte Reexam"
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450
Alexandria VA   22313-1450

Please FAX any communications to:

(571) 273-9900
Central Reexamination Unit

Please hand-deliver any communications to:

Customer Service Window
Attn:  Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Signed:

James Keenan
CRU Examiner
AU 3993
(571) 272-6925

Conferees

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| **Notice of References Cited** | | 90/007,524 | 5225925 |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | James Keenan | 3652 | |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-3,590,004 | 06-1971 | Woodcock | 252/181.4 |
| * | B | US-3,599,114 | 08-1971 | Snitzer et al. | 372/40 |
| * | C | US-4,923,279 | 05-1990 | Ainslie et al. | 385/127 |
| * | D | US-4,938,556 | 07-1990 | Digonnet et al. | 359/341.31 |
| * | E | US-5,007,698 | 04-1991 | Sasaki et al. | 398/181 |
| * | F | US-5,039,631 | 08-1991 | Krashkevich et al. | 501/64 |
| * | G | US-5,231,465 | 07-1993 | Huang et al. | 356/464 |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | 427,320 | 05-1991 | EP | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | C.G. Atkins et al., "High-gain, broad spectral width erbium-doped fiber amplifier pumped near 1.5 um", Electronics Letters, Vol. 25, p. 910, July 1989. |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)    Notice of References Cited    Part of Paper No. 20060818